Steven L. Stanley
850 NE 81st Ave., #716
Portland, Or. 97213
(503) 957-4226

IN THE UNITED STATES DISTRICT COURT

PORTLAND OREGON DIVISION

23 FEB '21 15:13 RECVD USDC-ORP

| | |
|---|---|
| Steven L. Stanley, <br>          Plaintiff, <br> Vs. <br> Community Development <br> Partners (CDP) - Eriks <br> Pain, Kyle Paine, Bradford <br> Long, 3416 Via Oporto, Suite <br> 301, Newport Beach, California <br> 92663, 126 NE Alberta St., <br> Suite 202, Portland, Oregon <br> 97211 (971-533-7466/www. <br> communitypartners.com; <br> Kathryn Neech (owner-CDP <br> Agent); Guardian Management <br> LLC, Park Ave. West, 760 SW <br> 9th Ave., Suite 2200, <br> Portland, Oregon 97201, etal. <br>          Defendants. | CASE NO: 3:21-CV-193-mo <br><br> JUDGE: michael mosman <br><br> CIVIL RIGHTS COMPLAINT <br> SEC 1983 <br> (Jury Trial Demanded) <br> COMPLAINT <br> AS AMENDED |

I.

PARTIES TO THE COMPLAINT:

PLAINTIFF — Steven L.
Stanley, pro se
Milepost 5/The Studios
850 NE 81st Ave, # 216
Portland, Oregon 97213
(503-957-4226)

DEFENDANTS:

#1

Community Development
Partners (CDP), Owners of
the property known as the
Milepost 5/The Studios
artist community located
at 850 NE 81st Ave, Portland,
Oregon 97213; Bradford Long-
Dir. of CDP Asset Management;
Erik and Kyle Pain (Brothers),
Founders of CDP and owners of
the above cited MP5 property;
Kathryn Nealin - "Owner/Agent"
CDP of MP5 property . (503) 426-3520

Pg. 1

#2. Guardian Managent LLC

Park Ave West

760 SW 9th Ave., Suite 2200

(503) 802-3600

The Contracted Property

Management Co. of MP5


## II.

1. JURISDICTION:

This Court has subject matter jurisdiction pursuant to 28 U.S.C. Sec. 1343 (3), Sec. 1331, 1367 (a); 28 U.S.C. Sec. 1391 (b)(3) as amended by Sec. 311 by the Judicial Improvements Act, 1990, Pub. L. 101-650. Stat. 5089; 28 U.S.C. Sec. 1391-1407; and Article III of the U.S. Constitution. The claims and allegations being made herein arise under Federal Statory law (Fair Housing Act, 42 U.S.C. Sec. 3601 et. seq. [Chapter 45 - Public Health], Current through Pub. L 116-168; 42 U.S.C Chptr. 8 - Low Income Housing and specifically FHA Sec. 3613 (a) (1) (A)(B)(2); Sec 1437f; LIHTC and OHCS provisions; Violation of rights and protections, priveleges under Americans With Disabilities Act, 42 u.s.c. Sec. 12101 et seq. (Title III), 42 U.S.C. Title 42, chptr. 21 [sub. chptr i-11 generally]. In addition, Plaintiff claims violation of his Eighth Amendment, Due Process,

Pg. 2

Equal Protections in the Fifth Amendment as incorporated in the Fourteenth Amendment to the United States Constitution.

## VENUE:

2.    Defendants are owners, agents, representatives, and or managers of the property know as MP5/the Studios Artist Community located at 850 NE 81st Ave., Portland, Or. 97213. At all times referenced herein time period of February 1, 2020 through the present and CDP's purchase of the said property in 2018 were the acting owners and managers of the property. Each defendant had active and direct control, responsability of all operations, policy and decisions-making of the premises and having full notifications and knowledge of the facts, violations, complained claims being broaght in the instant case. All parties to this action live and do business in Portland, State of Oregon within this Courts jurisdiction and venue.

3.    Plaintiff states he anticipates bringing numerous state law claims as they arise out of a common nucleus of operative fact[s] and hereby puts on notice and reserves the right to enjoin such claims invoking the Courts pendant jurisdiction. Such state law claims include but not limited to violation of ORS Sec. 124.005 - 124.040 and OHC statutory standards.

4.    Plaintiff took great pains and rigorous efforts to seek reasonable means of resolution including an offer for mediation to obtain relief for what are ongoing violations. Plaintiff has provided defendants legal counsel Notice of Intent highlighting issues and claims no less than two weeks prior to filing of this action. Plaintiff has little recourse at this point in time but to seek relief by bringing this cause of action before this Honorable Court.

5.    Plaintiff has standing to bring this cause of action in that 1.) he is disabled receiving monthly Soc. Sec. (SSI) benefit and SNAP food assistance (See **EXHIBIT** #1 attached hereto); 2.) Plaintiff has suffered an injury of fact, tangible and intangible; That it is directly traceable to the challenged actions of defendants; 3.) That it is likely to be redressed by a favorable decision.

6.    For his cause of action against defendants Plaintiff states:
a)    By this reference, Plaintiff incorporates each

and every allegation and averment contained in paragraphs 1-4 as if thoroughly written and set forth herein.

b.)   Defendants are being sued in their individual and (occupational employment) capacity[s] as the acting owners, operators, agents and managing representatives of/for Community Development Partners and or Guardian Management LLC of the property known as Milepost 5/The Studios located at 850 NE 81st Ave., Portland, Or. 97213 (503) 333-3321. All named defendants have total operational, ownership, managerial control and authority in implementing policies, practices, rules in regard to said property.

c.)   Plaintiff seeks monetary punitive and compensatory damages for sustained injury, physical, emotional, mental, tangible and intangible.

d.)   Plaintiff seeks Declaratory Judgement that the defendants violated Plaintiffs Constitutional and Civil Rights and such violations as the Court and or jury may so find.

e.)   Plaintiff requests a TRO prohibiting any effort by defendants to evict Plaintiff from his rental domicile with or without cause pending final disposition of this case and an order that defendants immediately relocate to

Pg. 5

another area room location of the MP5 complex
the occupants/tenants in apartment #316 directly
above plaintiff's domicile as they have and
continue to pose a physical threat and danger
to Plaintiff in vicious acts of retaliation for
Plaintiff's greivances against them and are a
major contributor to Plaintiffs cause of action
and physical, emotional and mental injury.

## III.

A) STATEMENT OF FACTS:

7.    Defendant Community Development Partners (CDP)
is a California based company with acquisitions in Oregon,
California, Arizona, Nevada, an industry engaged in
commerce. CDP allegedly received B-Corporation certification
in August 2019. Plaintiff believes CDP also received
tax-credit low-income certification pursuant to
L.I.H.T.C. program governed by Sec. 42 of Internal Revenue
Code, Fair Housing Act [42 U.S.C. sec. 3601 et seq., Sec. 1437f]
(chptrs 8, 45 - Public Health). CDP was founded in 2011
and purchased the former Presbeterian Seniors Home
now known as Milepost 5/The Studios sometime in
mid-late 2018 and contracted Viridian management
to initially manage the MP5 complex which is a mixed-use

Pg. 6

Commercial/Residential Facility. As the result of
unconstitutional conditions and varied violations CDP
was always able to evade accountability for (See
EXHIBIT # 2 [R and B] attached hereto). On February 1,
2020 Guardian Management took over contracted
managerial control of MP5 under CDP oversight.
Guardian has tentacles reaching nationwide in
its business operations engaged in industry
commerce and interstate communications

8.      Plaintiff is a 68 yr., disabled, and basically pseu-
retired moleculor biologist and actively teaches and
practices Phytochemistry specializing in strategies and
treatment of cancers and viruses for 36 plus years
(See EXHIBIT # 3 attached herewith). In March 2019
Plaintiff responded to a memo sent to housing
assistance agency's advertising rentals (See Exhibit
2-R at pg. 5). After some objections and contested
by Plaintiff's program based rent-assistance case
manager, Plaintiff signed lease agreement before
case mgr's arrival to act in performance and duty
pursuant to FHA (42 U.S.C., Sec. 1437f, Subsections
(o)(A)(B)(c)(ii)(F). At this point and again Transition
Projects became a tenant in common as they have been
providing program based rent-assistance for 9 months

of Plaintiffs' total 22 months occupancy at MPS.
Plaintiff after the disruptive controversy over
his signing of lease agreement without prior
review by the program case mgr., Plaintiff took
possession and occupancy of Rm. 216 (a SRO- single
room occupancy on April 12, 2019 (See Lease Agreement
marked EXHIBIT #4 attached hereto). Plaintiff is
a disabled individual under Americans With Disabilities
Act [42 u.s.c., sec. 12101 et seq.;(Pub. L. 101-336, 7/26/1990,
104 stat, 327) 12110 et seq. 1/1/2009, last amended Dec. 19, 2014].
Plaintiff suffers from a plethora of medial infirmaries
and is struggling with further complications and
recovery from coronovirus infection detected April
4, 2020 (See EXHIBIT #5 attached hereto). MPS
The Studios is a mixed-use commercial/Resident
Facility as defined in Title III of the ADA as with
holding tax-credit low income housing falling
under regulatory structures of FHA, LIHTC, OHC
and guidelines. Aproximately a third of Plaintiffs'
residency has been funded by Federal, State, County
distributed funds by program based rent-assistance
(See EXHIBIT #6). In the late night hours
(11:30 pm of December 28, 2020) while sitting
at his second floor window Plaintiff had a
full-unopened beer can hurled and smashing

Pg. 8

into his window by the MP5 tenant who Plaintiff can only identify as occupant in Room #328 as the defendants refuse to provide this individuals name to Plaintiff for purpose of obtaining a TRO against this person thus stymieing accomplishing this process. Plaintiff looked out and identified Rm. 328 who stood below ranting and raving, spouting obscentities at Plaintiff at aprox. 1108 on December 29, 2020. (Plaintiff has details recorded in his cell phone memory of the time frame and PPB's records of his 911 call). Rm. 328 returned again aprox. 30 minutes later ranting and raving beneath Plaintiff's window. Plaintiff at this point ran out to confront this person and staying back at 10 feet or so, Rm. 328 then brandished a gun and chambered a round saying "meet Mr. Glock" and stated he will "shoot me [Plaintiff] dead". Plaintiff more than hastily fled in what a witness (Ms. Brandy Trot) stated was Plaintiff with hands raised backing up and into the building. The police arrived and an "incident report" was filed and Plaintiff is awaiting to receive the report costing $30.00 hoping it cites the assailants name so he can proceed with obtaining a TRO (See EXHIBIT #7 attached hereto). Defendants response goes to Plaintiff's Due Process claim.

Pg. 9

## IV.

CAUSE OF ACTION:

B) Claim 1 — Violations of Americans With Disabilities Act:

9. Plaintiff states, enumerates several count elements. First, Defendants acts/inaction, omissions, failure, and practices, denied Plaintiff reasonable accomodation to his serious medical need, specifically to a smoke free living environment. Defendants have not and do not make the slightest reasonable effort to enforce their own lease agreement No smoking policy (not even in regard to their own employee maintenance personnel). Defendants have no designated area or wing of this huge complex as 'smoke free' for those non smokers and requesting such as Plaintiff. Defendants have taken a laizze fare look the other way to this issue. Furthermore, as a Commercial Facility which also has several independant outside businesses located in the facility such as Delilahs Catering, H&R Solutions as with Plaintiff's work place office are in flagrant violations of the Oregon Clean Air Act requirements and incorporates this state Law violation claim herein while also constituting breach of contract (landlord/Tenant) contractual relationship. Defendants acts, failures and practices have resulted in injury, i.e.,

exacerbation of his "asthma", "environmental allergies" and sinusitis (See Exhibit 5). Basically this can also represent an equal protection claim — discrimination by way of being a member of a growing class of non smokers. The harmful exposure of 2ndhand smoke is well documented and antithetical to current social standards of health, safety, security and basic human decency. Second, defendants acts, omissions, failures, and practices denied Plaintiff the right and reasonable accomodation to a healthy, safe and secure living environment and instead has knowingly and documented, created a unhealthy, dangerous and hostile environment fraught with theft, thuggery, fights and unimangible disturbances throughout late night to twilight morning hours causing sleepless nights, fear, anxiety and emotional distress and the right to peaceful enjoyments of his residence. MP5 is a wild lawless frontier at present with no enforcement of any-thing, least of all compliance with State, County mandated restrictions constituting a deadly threat (See EXHIBIT #8 attached herewith). Plaintiff had to file a formal complaint regarding Covid 19 restriction non- compliance and pg. 3 of EXHIBIT 7 was defendants response.

Pg. 11

C) Claim 2 - Violation[s] of Fair Housing Act :

10.    Plaintiff has standing to bring this claim pursuant to FHA - 42 U.S.C., Sec. 3610(a), 3613(a)(1)(A)(B)(2) and is within the 2 year statutory time period and states it as a discrimination claim which the duty not to discriminate in housing conditions encompasses the duty to not permit Known harassment on protected grounds. To this end Plaintiff not only suffered mere harassment but threats of physical harm, telephone death threats and a virtual reign of terror launched against him by residents forcing Plaintiff to vacate his domicile after a deranged tenant hurled a full unopened beer can into his window and returned an hour later chambering a loaded gun threatening to "shoot [Plaintiff] dead" at 12:36 am on Tues., December 29. Plaintiff alleges the hostility and 'harassment' was in retaliation for his greivances against specific individuals (Rms-316, 328) implicating First Amendment claim issues. Plaintiff further alleges that defendants Guardian management employee[s] maintenance personnel. specific acts enabled, aided and or abetted, and factually encouraged such retribution through inciting comments to residents. Plaintiff suffered factual injury as a result.

Pg. 12

Plaintiff further alleges Defendants as corporations failed to provide nondiscriminatory housing and retaliated or otherwise discriminated against him in several contextual elements. 1.) by dismissing Plaintiffs many complaints, ignoring them, and not responding in effectively acknowledging them or acting upon them to abate or otherwise discourage further harassment, threats of physical harm; and 2.) failure to provide the fully panoply of constitional due process to the extent of not so much as providing an interview to discuss, detail and give a narrative of the events ( brandishing of a firearm by Rm. 328 on the early morning hours of December 29, 2020) and that Plaintiffs sexual orientation (as an openly and known gay person) as the assailant in Rm. 328 was ranting "fucking faggot", "queer" when hurling the unopened beer can into Plaintiff's window thus violating privileges, immunities and rights based on a protected characteristic. Therefor violating 42 u.s.c., Sections 3601, 3603(b), 3604, 3605, 3606 which are co-extensive with Sec. 3617, also has an analogue with ADA provisions. See also Title VII of the Civil Rights Act (1964), Sec. 703; Civil Rights Act of 1968, Sec. 804; and Restatement (second of Prop.: Landlord & Tenant,

Pg. 13

Sec. 6.1 cmt. d, ill us. 10-11; Sec. 4.3; 24 CFR. Sec. 100.7 (a)(1)(iii). It is clear that FHA not only does it create a liability when a landlord intentionally discriminates against a tenant based on a protected characteristic; it also creates a liability against a landlord that has actual notice of a tenant-on-tenant harassment based on a protected status, yet chooses not to take reasonable steps within its control to stop that harassment, and notwithstanding interfered with peaceful use and enjoyment of Plaintiff's residency and of community use of MPS studios community kitchens, laundry facility, community room (Art Haus) events and usuage due to the prevailing and ongoing threat to Plaintiff's health, security and safety. A "hostile, dangerous" environment" in that Plaintiff endured unwelcome harassment based on a protected class and characteristic: the harassment was extreme-severe and pervasive enough to interfer with terms, conditions, privileges of his residency or in the provision of services or facilities; and that there is a well established legal basis for imputing liability to defendants. Plaintiff's narrative, facts and complaints represent more than a simple quarrel between neibhors or a mere isolated act of harassment, rather, a prolonged assault for months.

Pg. 14

D) Claim 3 - Violations of Plaintiffs Due Process Rights:

11.    Plaintiffs claim is in regard to established greivance procedures and alleges blunt disregard for and violation of that right which requires fundamental procedural fairness for those facing deprivation of Life, Liberty or property - The full panopoly of Constitutionally mandated due process procedures and apply to public housing, Sec. 8 vouchers, program based rent-assistance, and tax-credit low income housing. To this end defendants acts, omissions, failures, policy and factual practices did not and cannot meet Constitutional muster...

E) Claim 4 - Violation of Plaintiffs Equal Protection Rights:

12.    Plaintiff alleges defendants acts, omissions, failures, practices and or policy violated Plaintiffs equal protection right[s] in the framework of habitability which resulted is a grossly disparate and injurous impact differently than others or those similary situated and was a random and arbitrary and intentional with an overtly discriminatory harmful affect. This claim evolves around defendants sudden random practice in the lease application process and is a deprivation of substantive due process. Plaintiff suffered disparate treatment resulting in harm due to defendants acts and

Pg. 15

practices were the proximate cause of injury suffered by Plaintiff. Even a equal protection claim that a party was disadvantaged is cognizable while potentially not subjected to objective reason-ableness standard although perhaps to a lesser degree of scrutiny. Defendants rental application vetting process was suddenly altered giving no notice of such resulting in inequitable disadvantage to Plaintiff and those similarly situated and State remedies are irrelevent to whether a 1983 action to address a substantive constitutional deprivation[s]. Plaintiff also incorporates into this equal protection claim alleging a specific provision of lease agreement as being unconstitutional (see Exhibit 4 headlined as "Milepost 5 Studios Rental Agreement 'Addendum'" at pg. 4, para 28). This "Addendum" is not a part of ANY of the states authorized MultiFamily NW Oregon rental agreement and its imposition into the contract by CDP is/was unconstitutional and questions if its insertion was ever viewed by HUD or local Fair Housing Counsel, obviously an invented scheme of sorts by CDP going renegade.

F.) Claim 5 – Plaintiff alleges defendants breached the
     Landlord/Tenant contractual relationship:

13.    Plaintiff asserts his right to contract to make
and enforce contracts when breached, including the
non-enforcement of conditions and terms of that
contract, and the right to enjoyment of all benefits,
privileges, terms and conditions of contractual
relationship. Basic to all leases is the implied
covenant of quiet and peaceful enjoyment of residency.
The U.S. Housing Act, 1937, Sec. 3, as amended, 42 U.S.C.,
Sec. 1437 a-f (1982 ed. and supp. III) gave public housing
tenants a right to a lease from unreasonable
terms and conditions, and infringement of this
right is actionable under 1983. See also "Right
to Contract" phrasing of Civil Rights Act, 1991, Sec.
101, 108, 110 . Both defendants are also not in
compliance with ORS, Sec 90.320, and Sec. 90.360
and incorporates such claim herein claim 5, para 13.


G) Claim 6 – Defendants Violated Plaintiff's Eighth
     Amendment Right against the infliction
     of needless, unnessesary, wanton
     pain and suffering:

14.    Defendants acts, omission[s], failure, practices and
apparent policy[s] fostered, engendered a unhealthy,

Pg. 17

hostile, dangerous, lawless, rampant terroristic environment manifested by fear and mistrust which was the proximate cause of needless pain and suffering resulting in physical, emotional, tangible and intangible injury. At this point and time it is defendants who possess the major portion of collaborative evidence of these claims by way of Plaintiff's written and detailed written complaints and greivances and security surveillance camera footage which they possess and control. The violations will appear obvious and there need not be a materially similar case for the right to be clearly established.

15.    Plaintiff brings this cause of action under the 'class of one' theory as there are other party's with a vested interest in the outcome such as the Home Owners Association in the adjoing condominiums known as Milepost 5 The Lofts located at 900 NE 81st Av., Portland, Or. 97213 headed by its Chairperson Brandy Trot. It is also in Plaintiff's zone of interest as an aggrieved party with an interest in the protection by the statutes and Constitutional rights being violated. Transition Projects also has a vested interest in outcome as well.

Pg. 18

H) Claim 7 — Plaintiff alleges Defendant community Development Partners have presented false, misrepresentation of facts in their submission of documents to obtain the Community Development Grants, Federal tax-credit certification and is in conflict with facts, reality. In short, Plaintiff claims CDP has and is committed fraud in their filings with HUD, IRS to obtain and retain this tax benefit status and LIHTC provisions?

16. Defendant CDP is not nor ever has been in compliance or lived up to obligations in obtaining the LIHTC and above community grants. And such grants are conditioned upon certification that grant[s] will be conducted and administered with provisions of such. Plaintiff's claim pays [ing] specific reference to 42 U.S.C. Sec. 5304 et seq., i.e., "Statement of Activities" (sec. 5306 (b)(d)(2)(B) for example as with Sec. 811. Defendants have never acted in compliance nor carried out or fulfilled obligations encoded in these statutes. Rather, Defendants have not so quietly converted property in question into an un-authorized, unlicensed homeless shelter minus the social services support structure and a nomadic tourist hostel also operating unlicensed. Plaintiff seeks a court judicial review and investigation (state and Federal)into these allegations.

Pg. 19

## V.

## RELIEF:

17.    Plaintiff is suing all named defendants in their individual, corporate official, employer, employee capacity[s] in their role as property owners and property management, as agents, operatives, and the legal decision-making and policy making authoritive representatives of Community Development Partners and Guardian Management LLC who acting in mutual, direct, collaboritive symbiotic relationship in all decisions related to the claims, violations as set forth in paragraphs 7-15.

(a)    Plaintiff seeks monetary punitive and compensatory damages in equal sum of $500,000, as to defendant Community Development Partners and equal sum of $500,000. as to Guardian Management LLC for actual physical injury, emotional (tangible and intangible) and mental distress and lost usage of his rental (#216) at Milepost 5/ The Studios from December 24, 2020 through February 28, 2021 as the proximate cause of Defendants acts, failures, omissions, and practices that became standard policy resulting in financial loss of $2,179.00. to Plaintiff.

Pg. 20

b)    A Declaratory Judgment issued stating Defendants
are in violation of Plaintiff's Eighth Amendment
rights and faces irreparable harm if conditions of
which he describes are continuous and to act
immediately, take steps to eliminate, remedy
those specific threats to his health, safety,
security which is to include enforcement of all
Covid 19 mandated statewide restrictions
consistent with all commercial, business and
workplace facilities for protection of Plaintiff
and all others occupying as residents and busin-
esses the complex known as milepost 5/The Studios
and within whatever timeframe the Court may so
specify.

c)    A Restraining Order (TRO) to 1.) order a halt
or cease and desist all further rental applications,
process/procedures, intake and admission of any
further "new" residents pending investigation
of Plaintiff's allegations/claim[s] in the foregoing
paragraphs 9-16, pgs 9-16; 2.) prohibiting any
effort at eviction of Plaintiff for cause or no
cause through the pendency of case proceedings
and final disposition of all care related matters.

d)   Plaintiff requests the court to invoke its pendant—supplemental jurisdiction pursuant to Article III, 28 U.S. Code, Sec. 1367 to enjoin the following state law claims defendants were/are in violation:

1. Abuse of the Elderly, and with Disabilities; ORS 124.050-124.140, 410.610 et.seq.; 640.35 (1)(b)(d),(1)(B)(e),(A)(D), Plaintiff qualifies as a victim pursuant to 124.100 (1)(B)(e)(A)(D).

2. Oregon Clean Act (ICAA), Or. AR 333-015-3000 (as adopted from 42 U.S.C., Sec. 7401; and Governor Browns Temporary Emergency Order that was effective April 30, 2020 through October 26, 2020.

3. Oregon Rent Control Law (Senate Bill 608 signed into law February 2019. (non-compliance)

4. Landlord/tenant Law (H.B. 4204) Chptrs. 90, 91 ORS, Sec. 90 (non-compliance)

5. Oregon Housing and Community Services LLC (OHCS) provisions. (non-compliance)

6. Violations of LIHTC provisions non-compliance; 26 U.S. Code, Sec. 42

e)   All reasonable attorney fees of hours and costs associated with bringing and sustaining this cause of action.

f)   Another reliefs as this Court deems to be equitable and appropriate to protect and preserve Plaintiff's Constitutional, Civil Rights, and or required and or necessary in the best interest of all parties.

g)   Plaintiff, Steven L. Stanley hereby state under penalty of law that the facts, statements and circumstances as set forth herein are true and correct to the best of his belief, information at present time available, knowledge and recollection. A jury trial is demanded

Respectfully Submitted;

Steven L. Stanley

Steven L. Stanley, pro se

Plaintiff

850 NE 81st Ave., #216

Portland, Or. 97213

(503) 957-4226


SWORN and SUBSCRIBED to before me this 23rd day of February, 2021.

Acknowledgment
State of OREGON
County of _Multnomah_
This Instrument was acknowledged before me
on: _February   23rd_, _2021_
by: _Steven  Stanley_

Notary Public

Pg. 23

CERTIFICATE OF SERVICE

I, Steven L. Stanley, hereby certify a true and correct copy of the foregoing Amended Complaint (Sec. 1983) was hand delivered (placed into 'drop box') to the U.S. District Court, Mark O. Hatfield Courthouse, 1000 S.W. Third Ave., Portland, Or., this 23rd day of February, 2021 with copies mailed, postage prepaid, to the following:

cc: Atty. Christopher J. Dotzmann
200 SW Market St., Suite 1800
Portland, Or. 97201
and
Greenspoon Marder
Atty. William Edgar
PacWest Center
1211 SW 5th Ave., Suite 2850
Portland, Or. 97204

Steven L. Stanley

MP5/Studios, 850 NE 81st Av.,
#216, Portland, Or. 97213
(503) 957-4226

Pg. 24