Carter M. Mann, OSB No. 960899
mannc@lanepowell.com
Courtney B. McFate, OSB No. 202025
mcfatec@lanepowell.com
**LANE POWELL PC**
601 S.W. Second Avenue, Suite 2100
Portland, Oregon 97204
Telephone:  503.778.2100
Facsimile:  503.778.2200

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| STEVEN L. STANLEY,<br><br>                              Plaintiff,<br><br>     v.<br><br>COMMUNITY DEVELOPMENT<br>PARTNERS (CDP); GUARDIAN<br>MANAGEMENT, LLC; VERIDIAN<br>MANAGEMENT, INC.,<br><br>                              Defendants. | Case No. 3:21-CV-193-MO<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT**<br><br>*[Filed Concurrently with AFFIDAVIT OF COURTNEY B. McFATE IN SUPPORT OF PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT]*<br><br>REQUEST FOR ORAL ARGUMENT |

Plaintiff STEVEN L. STANLEY ("Plaintiff") respectfully submits the following Response in Opposition to Defendants COMMUNITY DEVELOPMENT PARTNERS (CDP) and GUARDIAN MANAGEMENT, LLC's (collectively, "Defendants") Motions to Dismiss Plaintiff's Second Amended Complaint.

**COMPLIANCE WITH LOCAL RULE 7-2**

This response complies with the word limit and page limit set forth in Local Rule 7-2.

PAGE 1 –  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS
     TO DISMISS PLAINTIFF'S SECOND AMENDED
     COMPLAINT

719694.0001/8656714.1

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

# I. STATEMENT OF FACTS

Plaintiff filed his Second Amended Complaint ("Complaint") on August 12, 2021. (Affidavit of Courtney B. McFate in Support of Plaintiff's Opposition to Defendants' Motions to Dismiss Plaintiff's Second Amended Complaint ("McFate Decl."), at ¶ 2.)  On August 26, 2021, defendants filed their Motions to Dismiss Plaintiff's Second Amended Complaint ("Motion"), including motions to dismiss for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6), and a motion to strike under Rule 12(f).  (McFate Decl., at ¶ 3.)

# II. LEGAL STANDARD

## A.    STANDARD FOR MOTION TO DISMISS UNDER RULE 12(b)(6).

Dismissal is appropriate under Fed. R. Civ. P. 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted."  In ruling on a motion to dismiss, courts must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cty.*, 487 F.3d 1246, 1249 (9th Cir. 2007).  A complaint should not be dismissed unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claims that would entitle the plaintiff to relief.  *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).   On a motion to dismiss for failure to state claim, the question is not whether the plaintiff will ultimately prevail, but whether his complaint is sufficient to cross the Court's threshold.  *Skinner v. Switzer*, 562 U.S. 521, 529-530 (2011).  Ordinarily, a motion to dismiss should be disfavored, and doubts should be resolved in favor of the pleader.  *Williams v. Gorton*, 529 F.2d 668, 672 (9th Cir. 1976).

When the legal sufficiency of a complaint's allegations is tested by a motion under Rule 12(b)(6), "review is limited to the complaint." *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001).  "Indeed, factual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)".  *Id.*

## B.    STANDARD FOR MOTION TO STRIKE UNDER RULE 12(f).

Before responding to a pleading, a party may move to strike any "redundant, immaterial, impertinent or scandalous matter."  Fed. R. Civ. P. 12(f).  The disposition of a motion to strike is

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

within the discretion of the district court.  *See Fed. Sav. & Loan Ins. Corp. v. Gemini Mgmt.*, 921 F.2d 241, 244 (9th Cir. 1990).  Motions to strike are "regarded with disfavor because they are often used as delaying tactics, and because of the limited importance of pleadings in federal practice." *Freedman v. Louisiana-Pac. Corp.*, 922 F.Supp. 377, 392–93 (D. Or. 1996).  When ruling on a motion to strike, the court must accept the nonmoving party's allegations as true and liberally construe the complaint in the light most favorable to the nonmoving party.  *Gunderson LLC v. BCG Properties Grp., Inc.,* 3:19-CV-01569-AC, 2020 WL 1529356, at *4 (D. Or. Mar 30, 2020).

## III.  ARGUMENT

**A.    PLAINTIFF HAS PLED SUFFICIENT FACTUAL ALLEGATIONS TO SUPPORT HIS SIXTH CLAIM FOR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS.**

**1.    Plaintiff Has Pled Sufficient Factual Allegations to Support His Claim that Defendants Intended to Cause Him Severe Emotional Distress or Knew With Substantial Certainty Their Conduct Would Cause Such Distress.**

Plaintiff has pled factual allegations sufficient to support his claim for intentional infliction of emotional distress ("IIED").  Plaintiff acknowledges that a claim for IIED requires a plaintiff to plead and prove three elements, including that "defendants intended to cause plaintiff severe emotional distress or knew with substantial certainty that their conduct would cause such distress." (Motion, at p. 2 [emphasis added].)  But plaintiff disagrees that his claim does not stem from any conduct engaged in by defendants.

In his Complaint, plaintiff provides detailed information regarding defendants' affirmative conduct, including knowingly allowing the rapid deterioration of the subject property in the following manner: "trash stacked several feet high in the community kitchen, a cockroach infestation in the community kitchen, spoiled food in the common areas, dirty and unhygienic bathrooms, and plumbing clogged with human waste." (Complaint, at ¶ 30.)  Plaintiff also details the building becoming extremely unsafe, "with unauthorized visitors being let in off the street, and rampant drug use evidenced by the used syringes deposited in and around the subject property, including in the common area bathrooms and tenants' garden."  (Complaint, at ¶ 31.)  He further

PAGE 3 –  PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS
TO DISMISS PLAINTIFF'S SECOND AMENDED
COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719694.0001/8656714.1

states:  "As a result of the unsafe conditions at the subject property, and the failure of Defendants to abate those conditions, Plaintiff has feared and continues to fear for his personal safety." (Complaint at ¶ 32.)

Plaintiff also points to the "no smoking" policy, which applies to all tenants, and which defendants have affirmatively failed to enforce, despite plaintiff's repeated complaints. (Complaint at ¶¶ 44-48).  Defendants' failure to enforce the "no smoking" policy has "exacerbated Plaintiff's medical conditions, including his asthma, sinusitis, reactive airway disease, and COPD, greatly limiting his ability to breathe without assistance."  (Complaint at ¶ 49.)

In support of his IIED claim, Plaintiff alleges: "As stated in this Second Amended Complaint, Defendants have allowed the subject property to deteriorate into a filthy and unsafe place where drug use is rampant and debris is found throughout the common areas." (Complaint, at ¶ 88.)

Defendants admit that there is **no Oregon case law** that supports their assertion that "IIED liability is premised upon an affirmative act…A failure to act…does not constitute engaging in conduct."  (Motion, at p. 3.)  In support of this assertion, defendants cite only case law from other states.  (Motion, at p. 3).  While cases cited by defendants can be used to determine how the Oregon Supreme Court might decide this issue, they are not binding on this Court. *Siltronic Corp. v. Emps. Ins. Co. of Wausau*, 176 F.Supp.3d 1033, 1049 (D. Or. 2016).  In the absence of specific guidance from an Oregon appellate court, this Court should not impose a new requirement on plaintiffs seeking to recover for IIED.

**2.      Plaintiff Has Pled Sufficient Factual Allegations to Support His Claim That Defendants' Conduct Constitutes An Extraordinary Transgression of the Bounds of Socially Tolerable Conduct.**

Plaintiff acknowledges that another element of IIED is outrageous conduct that is "extraordinarily beyond the bounds of socially tolerable behavior."  (*See* Motion, at p. 4.) However, plaintiff disagrees that "Plaintiff's allegation that defendants failed to prevent other tenants from creating filthy and unsafe conditions does not constitute outrageous conduct."  (*Id.*)

PAGE 4 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

Defendants state that "Because failure by a landlord to maintain a dwelling in a habitable condition does not constitute extreme or outrageous behavior, as a matter of law, plaintiff's claim fails," but then admits that "No Oregon case appears to have considered the issue of whether a landlord's failure to maintain a dwelling in a habitable condition constitutes extreme or outrageous behavior." (*Id.*)

Oregon courts have found that a "special relationship" exists between landlord and tenant that bears on whether or not a landlord's conduct is extreme or outrageous for purposes of IIED. In *House v. Hicks*, 218 Or. App. 348 (2008), a case involving a claim for IIED, the Oregon Court of Appeals included the landlord-tenant relationship in a list of special relationships that "shape interpersonal dynamics" and "impose[] on the defendant a greater obligation to refrain from subjecting the victim to abuse, fright, or shock than would be true in arm's-length encounters among strangers." *Id.* at 360 (citing *Fitzpatrick v. Robbins*, 51 Or. App. 597, 602–03 (1981) (noting "the fact that plaintiffs, as landlords, were in a position of authority with respect to defendants and could affect their interest in the quiet enjoyment of their leasehold" in examining the landlord's level of offensive conduct for purposes of an intentional infliction of emotional distress claim).

The conduct by defendants outlined above goes beyond "creating filthy and unsafe conditions." Defendants' conduct has led plaintiff to fear for his personal safety and has exacerbated many of his serious medical conditions. (*See* Complaint, at ¶¶ 88-89.) In addition, Defendants' discrimination against plaintiff based on his disabilities has led to frustration, mental anguish, humiliation, and embarrassment concomitant with being treated as a "second class citizen." (*Id.* at ¶ 90.) Plaintiff has more than sufficiently pleaded that defendants' acts constitute extraordinary transgressions of the bounds of socially tolerable conduct, based on the special relationship between plaintiff and defendants as tenant and landlord.

For these reasons, defendants' Motion One should be denied.

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

**B.    PLAINTIFF'S FAIR HOUSING AMENDMENTS ACT AND OREGON FAIR HOUSING ACT CLAIMS DO NOT INCLUDE A STANDALONE CLAIM FOR FAILURE TO ENGAGE IN THE INTERACTIVE PROCESS AND SHOULD NOT BE DISMISSED ON THIS GROUND.**

To prevail on a discrimination claim under section 3604(f)(3)(B) of the Fair Housing Amendments Act ("FHAA"), plaintiff must prove: (1) that he is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.  *Howard v. HMK Holdings, LLC*, 988 F.3d 1185, 1189–90 (9th Cir. 2021).  The Oregon Fair Housing Act ("OFHA") mirrors the FHAA and is interpreted identically. (*See* Motion, at p. 6.)

Defendants allege that plaintiff's FHAA and OFHA claims contain "independent claims" based on defendants' failure to engage in the interactive process with plaintiff regarding his requests for reasonable accommodation. (Motion, at p. 6.)  Defendants further argue that there is no standalone liability under the FHAA for a landlord's failure to engage in an interactive process with a tenant, Motion at p. 6, citing *Howard*, 988 F.3d at 1193.  In *Howard*, the plaintiff argued that failure to engage in the interactive process, by itself, was sufficient to prove liability under the FHAA.  *Howard,* 988 F.3d at 1192-1193.  Plaintiff acknowledges that failing to engage in the interactive process does not provide an independent basis for liability under the FHAA, without a showing that an accommodation was necessary. *Howard,* 988 F.3d at 1192-1193.  However, Plaintiff's claims for violations of the FHAA and OFHA do not contain a *stand-alone* claim for failure to engage in the interactive process. Instead, plaintiff alleges that defendants failed to engage in the interactive process with him as part of their overall failure to provide him with the necessary and reasonable accommodations he requested.  (Complaint, at ¶¶ 53 and 67.)  The Complaint states in relevant part:

> Defendants have engaged in the following discriminatory acts against Plaintiff [under the FHAA]: (a)  refusing to maintain the habitability of the subject property, including but not limited to cleaning the subject property and keeping the common areas clear from debris, other tenants' belongings, spoiled food, and drug paraphernalia; (b)

refusing to respond to and abate the unsafe conduct of other tenants at the subject property, including but not limited to increasing security measures and evicting unsafe tenants; (c) refusing to enforce the subject property's no smoking policy, leading to an exacerbation of Plaintiff's medical conditions, of which Defendants are aware; (d) refusing to keep the common areas clear of debris and other tenants' belongings, limiting Plaintiff's access to his unit; (e) failing to engage in the interactive process with Plaintiff regarding his multiple requests for reasonable accommodation; and (f) failing to make reasonable accommodations in rules, policies, practices or services, including but not limited to designating a nonsmoking area of the subject property and relocating Plaintiff to a nonsmoking unit, when such an accommodation was necessary to afford Plaintiff an equal opportunity to use and enjoy the subject property.

(Complaint, at ¶ 53.)

Specifically, Defendants have committed the following unlawful actions in violation of the Oregon Fair Housing Act: (a)  discriminating against Plaintiff in the provision of services in connection with housing because of Plaintiff's disability, including maintaining the habitability and accessibility of common areas; (c) failing to engage in the interactive process with Plaintiff regarding his requests for reasonable accommodation; (d) refusing to make reasonable accommodations in rules, policies, practices or services when the accommodations were and are necessary to afford Plaintiff with equal opportunity to use and enjoy his dwelling; (e) intimidating and interfering with Plaintiff's use and enjoyment of his home on account of Plaintiff's exercise of his rights under O.R.S. § 659A.145, in violation of O.R.S. § 659A.145(8); and (f) assisting, inducing, inciting, or coercing others to violate O.R.S. § 659A.145, in violation of O.R.S. § 659A.145(7).

(Complaint, at ¶ 67.)

For the foregoing reasons, defendants' Motion Two should be denied.

**C.    PLAINTIFF'S REQUEST THAT DEFENDANTS EITHER ENFORCE THE EXISTING NON-SMOKING POLICY OR MOVE PLAINTIFF TO A NON-SMOKING UNIT ARE REASONABLE REQUESTS FOR ACCOMMODATION THAT DO NOT FUNDAMENTALLY ALTER THE NATURE OF THE PROGRAM OR CAUSE UNDUE FINANCIAL OR ADMINISTRATIVE BURDENS.**

Defendants contend that the accommodation requested by plaintiff to either enforce the existing "no smoking" policy or move him to a non-smoking unit are not "reasonable" because they are administratively burdensome and infringe on the contractual rights of other tenants. (Motion, at 7-9.)  This argument fails because (1) plaintiff is only requesting accommodations that uphold defendants' *existing* responsibilities to plaintiff under his lease agreement; (2) any financial

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

or administrative burden associated with the accommodations would be minimal; and (3) the accommodations would not lead to any infringement upon other tenants' alleged rights.

The FHAA makes it unlawful to "discriminate against any person ... in the provision of services or facilities in connection with [his] dwelling, because of a handicap" of that person or any person associated with that person. 42 U.S.C. § 3604(f)(2).  Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford [a disabled] person equal opportunity to use and enjoy a dwelling...." 42 U.S.C. § 3604(f)(3)(B); 24 C.F.R. § 100.204.  "The reasonable accommodation inquiry is highly fact-specific, requiring case-by-case determination." *Dubois v. Ass'n of Apartment Owners of 2987 Kalakaua*, 453 F.3d 1175, 1178–79 (9th Cir. 2006) [citations omitted].

Again, plaintiff is requesting that defendants enforce their existing "no smoking" policy, a policy already contained in all of the lease agreements for Milepost 5, or alternatively, that defendants provide designated smoking and non-smoking units and common areas.  Contrary to defendants' assertions, plaintiff's initial request is *not* to be moved to a different unit – it is that defendants enforce their own policy. In the alternative, plaintiff is requesting to be moved to a unit where the no smoking policy is actually enforced.  The financial or administrative burden associated with these accommodations, which would perhaps include more onsite management and security, diligent responses to tenant complaints regarding smoking, and actual follow-through with respect to taking action against tenants who violate this policy, are minimal and are already either explicitly or implicitly required by the lease.

For these reasons, defendants' Motion Three should be denied.

**D.    IF THIS COURT DISMISSES PLAINTIFF'S CLAIMS UNDER THE FHAA OR THE REHABILITATION ACT, PLAINTIFF REQUESTS THAT THE COURT EXERCISE ITS DISCRETION TO RETAIN SUPPLEMENTAL JURISDICTION OVER PLAINTIFF'S STATE LAW CLAIMS.**

Defendants ask the Court to decline to exercise supplemental jurisdiction over plaintiff's state law claims if the Court grants defendants' Motion to Dismiss plaintiff's FHAA or Rehabilitation Act claims.  This Court currently has supplemental jurisdiction over Plaintiff's state

PAGE 8 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719694.0001/8656714.1

law claims under 28 USC § 1367(a).  A district court's decision whether to exercise supplemental jurisdiction after dismissing every claim over which it had original jurisdiction is purely discretionary.  *Carlsbad Technology, Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009).  This discretion is informed by values of economy, convenience, fairness, and comity.  *Acri v. Varian Associates, Inc.,* 114 F.3d 999, 1001 (1997).  "That state law claims 'should' be dismissed if federal claims are dismissed before trial, as *[United Mine Workers v.] Gibbs* instructs, 383 U.S. at 726, 86 S.Ct. at 1139, 16 L.Ed.2d at 228, has never meant that they *must* be dismissed." *Id.* (emphasis in original.)

Dismissing plaintiff's state law claims would lead to further delay in litigating plaintiff's claims and would not result in economy or convenience.  Given the seriousness of plaintiff's claims, plaintiff's poor health, and the precariousness of his current living situation, delaying these proceedings by dismissing his state law claims would not serve the value of fairness.  Should the Court dismiss plaintiff's foundational federal claims under the FHAA or Rehabilitation Act, plaintiff respectfully requests that the Court retain supplemental jurisdiction over his state law claims.

**E.    DEFENDANTS' MOTION TO STRIKE PARAGRAPHS 35 THROUGH 41 OF PLAINTIFF'S COMPLAINT SHOULD BE DENIED BECAUSE PLAINTIFF'S SECOND AMENDED COMPLAINT PROVIDES NEW LEGAL AND FACTUAL CONTENTIONS AND DEFENDANTS SHOULD NOT BE PERMITTED TO USE A RULE 12(f) MOTION TO PROCURE THE DISMISSAL OF ALL OR PART OF PLAINTIFF'S COMPLAINT.**

Defendants claim that paragraphs 35 through 41 of the Complaint, which state that other tenants harassed plaintiff and used anti-gay slurs against him, should be stricken because they contain facts that "appear unrelated to plaintiff's claims against defendants" and "[d]efendants should not have to continue to expend time and resources continuing to litigate this issue." (Motion, at p. 9.)  Further, defendants argue, this claim was previously dismissed with prejudice by the Court. (*Id.*)

"Motions to strike are disfavored and should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."  *Does v.*

PAGE 9 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719694.0001/8656714.1

*Trump*, 328 F. Supp. 3d 1185, 1196 (W.D. Wash. 2018). For purposes of a motion to strike under Rule 12(f) on the grounds of materiality, "[i]mmaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded." *Pratt v. Phoenix Home Life Mut. Ins. Co*., 285 B.R. 3, 6 (D. Or. 2001). One test for determining "whether an allegation in a pleading is immaterial and impertinent within the meaning of Rule 12(f) is whether proof concerning it could be received at trial; if it could not, then the matter is immaterial and impertinent." *Id.*

Here, plaintiff provides additional factual information and legal grounds to support his FHAA and OFHA claims in his Second Amended Complaint, key information that was missing from his Amended Complaint. In paragraphs 35 through 41 of plaintiff's Second Amended Complaint, plaintiff refers to some of the same events he referred to in his Amended Complaint. However, he alleges additional facts and legal claims not made in his Amended Complaint. Specifically, plaintiff describes the harassment and unsafe conditions occurring at the subject property on defendants' watch, all of which were brought to defendants' attention and ignored. (Second Amended Complaint, at ¶¶ 35-41.)

Moreover, defendants are attempting to circumvent Rule 12(f)'s purpose by improperly obtaining a dismissal of this portion of plaintiff's Complaint. "Rule 12(f) is neither an authorized nor a proper way to procure the dismissal of all or a part of a complaint." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (2010). Reading Rule 12(f) in a manner that allowed litigants to use it as a means to dismiss some or all of a pleading would "create redundancies within the Federal Rules of Civil Procedure, because a Rule 12(b)(6) motion (or a motion for summary judgment at a later stage in the proceedings) already serves such a purpose." *Id.*

Here, defendants are attempting to obtain dismissal of a portion of plaintiff's Complaint that supports his claims under the FHAA and OFHA, on the grounds that the Court already dismissed his prior, different FHAA claims. However, this dismissal is improperly brought as a motion to strike and should not be permitted. For the foregoing reasons, defendants' motion to strike should be denied.

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719694.0001/8656714.1

**F.     IF THIS COURT IS INCLINED TO GRANT DEFENDANTS' MOTIONS, IT SHOULD DO SO WITHOUT PREJUDICE AND SHOULD GRANT PLAINTIFF LEAVE TO AMEND HIS COMPLAINT.**

As a general rule, a district court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2).  Plaintiff respectfully requests that if the Court is inclined to grant defendants' Motion, it grant the Motion without prejudice and grant plaintiff leave to amend his complaint.

## IV.  CONCLUSION

Based on the foregoing, Plaintiff respectfully requests that this Court deny defendants' Motions to Dismiss Plaintiff's Second Amended Complaint and order them to answer Plaintiff's Second Amended Complaint within ten days from the date of this hearing, or in the alternative, grant Plaintiff leave to file a Third Amended Complaint.

DATED:  September 9, 2021

LANE POWELL PC

By:     *s/ Courtney B. McFate*
          Carter M. Mann, OSB No. 960899
          Courtney B. McFate, OSB No. 202025
          Telephone:  503.778.2100
          Attorneys for Plaintiff

PAGE 11 – PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTIONS TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT

**LANE POWELL PC**
601 S.W. SECOND AVENUE, SUITE 2100
PORTLAND, OREGON 97204
503.778.2100  FAX: 503.778.2200

719694.0001/8656714.1